UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

Jesse Ramirez  §
    Plaintiff, §
                    §   Civ No. 07-2226(RWR)
vs                     §
                      §
Department of Justice et. al §
    Defendant §
                      §

RECEIVED
JUL - 2 2008
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

PLAINTIFFS MEMORANDUM IN SUPPORT
OF MOTION TO TAKE JUDICIAL NOTICE OF FACTS

Plaintiff asks this court to take Judicial Notice of the facts, as authorized Federal Rules of Evidence 201.

A. INTRODUCTION

**1)** Plaintiff is Jesse; Defendant is Dept. of Justice et. al.

2) Plaintiff sued Defendant for willful/intentional violations of the Privacy Act **ab inition** 5 § 552a; for Defendants failure to adhere to the mandates of Program Statement 5800.11 and for the severe adverse affects, injuries and actual damages Plaintiff has suffered as a result.

3) Plaintiff asks this court to take Judicial Notice of **(1)** Plaintiff is **not** trying to attack his sentence or conviction. These are infact the "adverse determinations Plaintiff has suffered as a result of Defendant willful and intentional failure to maintain accurate records, **ab intion.** 5 § 552a(g)(1)(C). Additionally, the civil remedy provided under 552a(g)(1)(C) results in monetary liability **only** if the agency acted in a willful or intentional manner. **Deters v U.S. Parole Comm'n 85 F3d 655, 660(D.C. 1996).** Plaintiff asks this judge totake Judicial Notice of these requisite elements/facts Plaintiff has set out in the Statement of Fact and (Att. # 1 thru 9 please review).; **(2)** Plaintiff asks this court to take Judicial Notice of the facts (refer to Att.# 1 in support of the Statement of Facts and all the supporting exhibits). That Defendant officials did "act with something greater than gross negligence" **Tigerina v Walters** 821 F2d 789, 799(D.C. 1987). Infact, Plaintiff has proven beyond a reasonable doubt. That during the commission/course of their willful violations to adhere to the mandates of the Privacy Act **ab initio.** Defendant officials (DEA agents, AUSA/Contreras and many other and etc.) did engage in "criminal

conduct and **clear** vilations of 18 § 1201; 18 § 1001; 18 § 241 & 242; 18 § 1621; 18 § 1622; 18 § 1623 ; 18 § 2; 18 § 3; 18 § 4 and many more. (actions **must** be so 'patently egrigious and **unlawful**' that anyone undertaking the conduct should have known it was unlawful) **Laningham v U.S. Navy** 813 F2d 1236, 1242(D.D.C. 1087). Plaintiff asks this court to tke Judicial Notice of the **facts** Plaintiff has "proven beyond a reasonable doubt" in (**Att. # 1 pg 1 thru pg 31 and all** supporting exhibits); (3) Lastly, Plaintiff asks this court to take Judicial NOtice of the **fact.** That the extent of the criminal conduct was so egregious and "shocking to the public". That the **death** of a **14** year old little girl in San Antonio, Tx. Was **infact** the direct result of Defendant officials "criminal conduct". That they (DEA agents, AUSA's office and other officers of the court) engaged in knowingly and then covered it up. Plaintiff will support his position on this. With a news article that will prove that Ashley Villarreal was killed in "cold blood" and by DEA agent Swierc. This was subsequent to all the violations of 18 § 1001, 18 § 241 & 242, 18 § 1621, 18 § 1622, 18 § 1623 and many more. Please refer to dates that Defendants officials began to engage in criminal conduct and when they killed her in cold blood. It is also a fact, that Defendant officials "created the circumstances" that they relied upon to justify their use of "deadly force". Plaintiff will submit the news article as **exhibit #** 1 and other news articles of the office of Johnny K. Sutton as **exhibit # 2.** Plaintiff rely's upon these facts/events. To support the "willful/intentional" elements of his burden. If these Defendant Officials would engage in criminal conduct and "wholesale killing" of little girls. Then it was **nothing** for them to knowingly, willfully and intentionally. Fail to adhere to the mandates of the Privacy Act **ab initio.**

### B. ARGUMENT

1)   The court has authority to take JUdicial NOtice of adjudicative facts. The court **can** take Judicial Notice of facts that are **not** subject to reasonable dispute if the facts are either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resorting tosources whose accuracy **cannot** reasonable be questioned.F.R.Evid **201(b). Ritter v Hughes Aircraft Co.,** 58 F3d 454, 458-59(9th 1995); see **Dippin Dots Inc. v Frosty Bites Distrib.** 369  F3d 1197, 1204-05(11th 2004).
2)   The court **must** take Judicial Notice of a fact if a party requests that the  court take Judicial Notice and "supplies the court with the necessary

information. Fed. R. Evid. 201(d). Plaintiff does **ask this** Judge to Take Judicial Notice of (**Att. # 1 pg** 1 thru **pg 31** and **all** the supporting exhibits) and rely upon this Att. # 1 as the "necessary information" for the court to take Judicial Notice of the requested facts.

3)   If a party makes a timely request, the party is **entitled** to a hearing on the propriety of taking Judicial Notice and the tenor of the matter noticed. Fed. R. Evid. **201(e)**. Plaintiff asks this court to hold a hearing to consider this motion

## C. CONCLUSION

The facts that Plaintiff has outlined and supported with documentation. Are capable of accurate and ready determination by resorting to sources whose accuracy cannot reasonable be questioned. **Ritter v Hughes Aircraft Co.**, 58 F3d 454, 458059(9th 1995). Plaintiff relies upon the actual DEA-6 reports, news paper articles, Defendant official pre-trial and trial testimony and etc.. In support of asking this court to take Judicial Notice of the requested facts.

Respectfully

Jesse Ramirez # 31805-180                                dated: 6/30/08

### CERTIFICATE OF SERVICE

I Jesse Ramirez do swear under penalty of perjury that I hand delivered a copy of this motion "Motion To Take Judicial Notice" to USP/Pollock officials on June 3d 2008 and sent this packet via first class mail addressed to:

| | |
|---|---|
| U.S. District Court | Defendants/Attorney |
| 333 Constitution Ave., N.w. | 555 Fourth Street N.W. |
| WAshington, D. C. 20001 | Washington, D.C. 20530 |

Respectfully

Jesse Ramirez

3.



# Drug trafficker cites lies, bad luck in daughter's death

Web Posted: 03/21/2004 12:00 AM CST

**Maro Robbins**
**Express-News Staff Writer**

BEAUMONT — Describing the dynamics that killed his daughter and imprisoned him, Joey Villarreal talks about a collision of lies and bad luck worthy of the paperback thrillers he reads in his cell.

The lies, Villarreal said, came from informants. Told to investigators, they depicted the 38-year-old as a violent cocaine trafficker capable of using his teenage daughter as a courier and decoy.

Bad luck guided the unsuspecting girl into a cluster of narcotics agents intent on arresting her father. They opened fire while trying to stop the car driven by 14-year-old Ashley Villarreal.

Gloomily discussing his role in the late-night debacle, federal inmate No. 31959-180 at times punctuated statements with tears of grief, but not remorse.

"It's not my fault," Joey Villarreal said. "I'm not the one who pulled the trigger."

His comments came less than a week after officials in the Bexar County district attorney's office announced they would not seek charges against the federal agent who fired on the girl. To the ire of Villarreal's family, prosecutors said federal immunity mostly shielded Special Agent Bill Swierc and that they could not prove his intent to kill Ashley.

Blame flew in all directions after the shooting of Feb. 9, 2003. Much of it piled on Villarreal, who was not present for the shooting but whose crimes were said to have attracted the Drug Enforcement Administration.

The father's first chance to respond directly came during a one-hour interview with the San Antonio Express-News last week in a cinderblock visitation room at the low-security federal prison in this East Texas city.

DEA agents and prosecutors have been told not to discuss the incident while it remains the focus of civil lawsuits and internal reviews, but local prosecutors reviewed much of the evidence collected by agents.

"There is absolutely no doubt Joey Villarreal was involved in the distribution of drugs," said Cliff Herberg, chief of the public integrity section of the district attorney's office.

According to Villarreal, the night his daughter was shot began with the first of many lies.

Told by an informant that Villarreal was at his mother's home and was packing for Mexico, agents quickly gathered in the dark outside the house on South San Joaquin Street.

Villarreal acknowledged he was at the house but insisted he was not preparing to flee and said he left relatively early, passing the parked surveillance agent who hours later would shoot the girl.

As Villarreal tells it, he was either asleep or watching television in his apartment at the time the agents confronted his daughter, who was driving the Mitsubishi Eclipse he had given her as an early *quinceañera* present.

"I didn't find out 'til the next day what had happened," he said.

DEA agents say they believe Villarreal spotted the surveillance and that his daughter was acting as a decoy when she sped away from the house in the Eclipse without lights on.

Yet another lie, Villarreal said.

Villarreal acknowledged that as he drove from his mother's house in a convertible Chrysler Sebring, he glimpsed a figure in a pickup.

But far from brazenly making eye contact with Swierc — as the agent noted in his statement to police — Villarreal claimed he thought nothing of the glance until the truck started to trail him.

Villarreal said he worried that the pickup carried a possible carjacker, not an investigator, and that the Sebring zigzagged through side streets until it lost its pursuer.

The next morning, a cell phone message sent Villarreal to Wilford Hall Medical Center, where his daughter lay in a vegetative state.

Turned away because he had not brought photo identification, Villarreal went to retrieve his wallet, but on the way talked with his attorney and decided to turn himself in.

Villarreal said that months later he pleaded guilty to cocaine trafficking because he believed the government would try to seize his mother's home and that prosecutors might even indict her for failing to report her son's crimes.

Grief, he suggested, clouded his judgment. "At the time I was not in my right mind," he said.

Villarreal now lives with five other cellmates in a dormitory of sorts known to its residents as the "chicken coop."

His few personal items include a photo album with a black-and-white photocopied portrait of Ashley on the cover.

He said the girl was like her father, in that she coveted cars and started driving at an early age.

When she asked for an Eclipse instead of a *quinceañera*, Villarreal gave it to her and let her use it because, he said, "She was a good driver."

With his black hair thinning and dressed in the khaki uniform of a federal inmate, Villarreal said he writes a monthly letter to his daughter and said he thinks of her daily.

"I pray every night and tell her justice is going to get done. If not through the system, it'll be by the Lord."

Villarreal choked up repeatedly while discussing his daughter. But when the tears came, he pressed his fingertips to his eyes as if he was trying to keep the tears in their own prison.

mrobbins@express-news.net

Online at:
http://www.mysanantonio.com/news/crime/stories/MYSA21.02B.DEA_Shooting_0321.79ffc06.html

Exh #2

P.S. I ask this court to take judicial notice 201(d) of How Johnny K. Sutton will do as He has a duty with other Gov't officials. But will fail and do so intentionally, to prosecute his own for all the criminal conduct they engage in, and that, the Supreme Court has ruled is illegal as well. (refer to All of Aff. #1)

# Jailing of border agents gets Senate scrutiny

By SUZANNE GAMBOA
ASSOCIATED PRESS

**MYSA.COM**
Keyword: SIA

WASHINGTON — Border Patrol agents should be allowed to shoot at fleeing drug traffickers, a senator suggested Tuesday.

The patrol's deadly force rules were questioned at a Senate Judiciary Committee hearing on the conviction of two agents who shot an unarmed drug trafficker and covered it up.

"Why is it wrong to shoot the (trafficker) after he's been told to stop?" asked Sen. Tom Coburn, R-Okla.

[redacted] attorney for the Western District of Texas.

[redacted] Agents might not know if the person is a trafficker, he said.

Agents can return fire to defend themselves, their partners or other people, Border Patrol Chief David Aguilar said.

Former agents Ignacio Ramos and Alonso Compean are serving 11- and 12-year prison sentences, respectively, for the 2005 shooting of drug trafficker Osvaldo Aldrete Davila on the Texas border near El Paso.

The convictions and sentences have become a cause celebre on talk radio and among some in Congress. Some lawmakers want President Bush to commute the agents' sentences.

"I think this is a case of prosecutorial overreaction," said Sen. Dianne Feinstein, the only Democrat at the hearing.

But Sutton defended the prosecution.

"Border Patrol agents are American heroes. They arrest 1 million people a year. Somehow they are able to do that without shooting people in the back," he said.

Feinstein said she wants to change a law Sutton used that required the agents receive at least 10 years for firing their weapons.

U.S. Attorney Johnny Sutton (left) and Border Patrol Chief David Aguilar testify Tuesday at a Senate Judiciary Committee hearing.

GERALD HERBERT/ASSOCIATED PRESS

TUESDAY, MAY 13, 2008 | SAN ANTONIO EXPRESS-NEWS | 5B

# Prosecutor accused of misleading jury to convict two border agents

**Conservative Christian group files ethics complaint over case.**

*Associated Press*

AUSTIN — A conservative Christian group has filed an ethics complaint against a federal prosecutor, arguing that he mishandled the case of two Border Patrol agents convicted of shooting a fleeing drug suspect and hiding evidence.

Kentucky-based Christians Reviving America's Values is asking the Texas Bar Association to investigate U.S. Attorney Johnny Sutton, arguing that he willfully misled the jury to convict Border Patrol Agents Ignacio Ramos and Jose Compean.

Sutton's office did not immediately return calls seeking comment Monday.

A federal jury in Texas convicted Ramos and Compean of assault, obstruction of justice and civil rights violations in the wounding of Osvaldo Aldrete Davila on the border near El Paso in 2005. A federal judge sentenced Compean to 12 years in prison, and Ramos to 11 years.

Appeals are pending in the 5th U.S. Circuit Court of Appeals.

"This whole case stinks to the highest parts of heaven," said Don Swarthout, president of the Christian group. "How is it possible in America to convict two border agents for simply doing their jobs and send them to prison for 11 and 12 years? How is it possible for Johnny Sutton's office to ruin the lives of two of our border agents based on the word of a known Mexican drug smuggler?"

The convictions caused a national firestorm among conservative lawmakers and others. Critics have repeatedly called the prosecution unjustified and the sentences extreme.

In exchange for his testimony against the agents, Aldrete was given immunity from prosecution for allegedly trying to smuggle drugs the day he was shot.

Jurors didn't hear evidence that Aldrete allegedly smuggled marijuana into the United States several months after the shooting. The complaint alleges Sutton's office misled the public and the jury about Aldrete's subsequent arrest.

During his trial, Compean testified that he shot in self-defense after seeing what he believed to be a gun in Aldrete's hand. Ramos said he fired in defense of Compean. Aldrete denied having a gun. Both agents acknowledged not reporting the incident.

# Critic says school bond votes increase debt, taxes for cities

CONTINUED FROM 1B

tough economic times."

The bond issue will allow the district to expand and renovate 40-year-old East Central High School, which currently has no walkways and hallways connecting four separate classroom pods.

The ease with which school districts pass bond elections bothers Peggy Venable, director of the Texas office of Americans for Prosperity. The organization advocates limited government and lower taxes.

**SAN ANTONIO-AREA SCHOOL BOND ELECTIONS**

■ All bond issues passed.

| District | Bond Issue |
| --- | --- |
| Seguin | $124.9 million |
| East Central | $50 million |
| Southwest | $22 million |

Source: TexasISD.com
EXPRESS-NEWS GRAPHIC

able said.

Local government debt across Texas is growing five times faster than people's income, she said.

"It is so great that the interest payment on local government debt in one year alone equals what all local governments spend on police and fire protection combined," Venable said.

Most school bond elections pass because of low voter turnouts and public relations campaigns funded by contractors and architects who benefit from construction projects, she

tions are misnamed because