# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

JESSE RAMIREZ,              )
                                           )
             Plaintiff,        )
                                           )
       v.                      )      Civil Action No. 07-2226 (RWR)
                                           )
DEPARTMENT OF JUSTICE, *et al.*,   )
                                           )
             Defendants.     )

## MEMORANDUM OPINION

Plaintiff brings this action under the Privacy Act, 5 U.S.C. § 552a, against the United States Department of Justice and several of its components, a United States Probation Office, and individual officials and employees of those entities.  The defendants have moved to dismiss, or in the alternative, for summary judgment.  For the reasons discussed below, defendants' motions will be granted.

## I.  BACKGROUND

Plaintiff currently is in the custody of the Federal Bureau of Prisons ("BOP") serving life sentences imposed by the United States District Court for the Western District of Texas, San Antonio Division.  *See* Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss and, in the Alternative, for Summary Judgment ("Defs.' Mot."), Ex. 5 (Public Information Inmate Data as of 05-20-2008) at 2 & Ex. 6 (criminal docket, United States v. Ramirez, No. 05-cr-00621-FB-3 (W.D. Tex. filed Nov. 20, 2002), *appeal dismissed for want of prosecution*, No. 04-50778 (5th Cir. May 9, 2006) (exhibit numbers designated by the Court);

Compl. at 2 (page numbers designated by the Court).  He initially alleges that the presentence

investigation report ("PSR") prepared by the United States Probation Office for the Western

District of Texas contained false and inaccurate information supplied by the United States

Attorney's Office for the Western District of Texas on which the defendants rely to his detriment.

*See* Compl. at 2-3.  Generally, the information about which plaintiff complains appears in "the

affidavit that supported probable cause" and "the affidavits for Title 3 intercepts that were used

before and at the grand jury proceeding to indict [him]."  Compl., Attach. A (April 13, 2005

letter to Johnny Sutton, United States Attorney for the Western District of Texas).

   According to plaintiff, the United States Probation Office prepared the PSR on or about

May 24, 2004.  Compl. at 2.  He says that he told the Assistant United States Attorneys

prosecuting the criminal case, the probation officer and the presiding judge in open court at his

sentencing hearing on July 22, 2004, that the PSR contained false and inaccurate information.  *Id.*

at 3.  Although plaintiff claims he "did submit documentation on the court record at sentencing []

[t]hat proved this information was in [f]act false and inaccurate," he complains that "not one of

these agency officers [or] officers of the court[] [m]oved to correct this false and inaccurate

information."  *Id*.  The PSR became a part of the BOP's records pertaining to plaintiff and is

maintained in his Inmate Central File.  *See id.* at 2-3.  Plaintiff contacted the United States

Attorney's Office for the Western District of Texas, the Executive Office for United States

Attorneys ("EOUSA"),  the BOP, and the Drug Enforcement Administration ("DEA") in

unsuccessful attempts to have the PSR corrected.  *See id.* at 3-6; Motion to Amend Pleading

[#14], Ex. 2 (April 28, 2008 letter to DEA).  Plaintiff does not identify any particular document

or record other than the PSR that is incorrect.  Rather, he asserts in general and vague terms that

records maintained by the United States Attorney's Office, the DEA and the BOP are false and inaccurate.  *See, e.g.,* Compl. at 3 & Attach. A at 1.

In his Complaint, plaintiff seeks an order "compelling the Defendants to correct all of the false/inaccurate information . . . within these [agencies'] files and that has affected Plaintiff adversely."  Compl. at 6.  According to plaintiff, if this false information had been corrected, he "would not have been convicted to begin with, [and he] would not have been given 3 life sentences and [he] would not have been classified [by BOP] and designated to a [United States Penitentiary]."  *Id.*, Attach. A at 2.  In subsequent papers, however, plaintiff appears to have abandoned his claim for amendment of the offending records and instead focuses exclusively on defendants' alleged failure to comply with the Privacy Act's accuracy provision, *see* 5 U.S.C. § 552a(e)(5), and his claim for actual damages resulting from the agencies' failure to maintain records with the requisite level of accuracy.[1]  *See* 5 U.S.C. § 552a(g)(1)(C).  *See* Motion to Amend Pleading [#14] at 1; Plaintiff[']s Memorandum in Response to Defendants['] Motion to Dismiss And Or Summary Judgment ("Pl.'s Opp'n") [#25-2] at 4-5, 38-40.

## II.   DISCUSSION

### A.  Defendants' Motions to Dismiss

The Federal Rules of Civil Procedure require that a complaint contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the

---

[1]       Plaintiff  concedes "that under certain exemptions of the Privacy Act and of 28 CFR (e.g. 28 CFR § 16.81(a)(4) and etc.) that defendant agency's [sic] do not have to amend/correct their records."  Pl.'s Opp'n at 3.  Further, he states that he is "not trying to attack his criminal conviction or sentence," as he "is "fully aware that the Privacy Act is not the proper means to attack/collaterally attack a conviction or sentence."  *Id*. at 4; *see id* at 38.

defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. __, __, 127 S.Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  A motion under Rule 12(b)(6) does not test a plaintiff's likelihood of success on the merits; rather, it tests whether a plaintiff properly has stated a claim.  *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  A court considering such a motion presumes the factual allegations of the complaint to be true and construes them liberally in the plaintiff's favor.  *See, e.g., United States v. Phillip Morris, Inc.,* 116 F. Supp. 2d 131, 135 (D.D.C. 2001).  Although "detailed factual allegations" are not required to withstand a Rule 12(b)(6) motion, a plaintiff must offer "more than labels and conclusions" to provide "grounds" of "entitle[ment] to relief." *Bell Atl. Corp. v. Twombly*, 127 S.Ct. at 1964-65.  Thus, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id*. at 1965 (citations omitted).

1.  <u>The United States Department of Justice is the Proper Party Defendant</u>

A person may bring a civil action under the Privacy Act against an agency of the federal government.  5 U.S.C. § 552a(g)(1).  For purposes of the Privacy Act, the term "agency" means:

> any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency[.]

5 U.S.C. § 552(f)(1).  The term does not encompass officers or employees of an agency.  *See Mittleman v. United States Treasury*, 773 F. Supp. 442, 450 (D.D.C. 1991) (dismissing all Privacy Act claims against defendants other than federal agencies); *see also Connelly v. Comptroller of the Currency*, 876 F.2d 1209, 1215 (5th Cir. 1989) (concluding that individuals

are not liable for damages under the Privacy Act because civil action is filed against the agency).

Nor does the term "agency" include "the courts of the United States," 5 U.S.C. § 551(1)(B), a

phrase interpreted as applying to the entire judicial branch of government.  *See Washington Legal*

*Found. v. United States Sentencing Comm'n,* 17 F.3d 1446, 1449 (D.C. Cir. 1994).   United States

Probation Offices are units of the federal courts and therefore are not subject to the Privacy Act.

*See DeMartino v. Fed. Bureau of Investigation*, 511 F. Supp. 2d 146, 148 (D.D.C. 2007);

*Callwood v. Dep't of Probation of the Virgin Islands*, 982 F. Supp. 341, 343 (D.V.I. 1997).

Accordingly, all the individual defendants named in the complaint, as amended, and the United

States Probation Office will be dismissed as party defendants.[2]  In addition, the named

components of the Department of Justice will be dismissed *sua sponte* since complete relief for

any Privacy Act violations by the components can be awarded against the Department itself.  *See*

*Lopez v. Huff*, 508 F. Supp. 2d 71, 73 n.3 (D.D.C. 2007) (substituting "the Department of Justice,

of which the [Federal Bureau of Prisons] is a component, as the real party in interest" in a

Privacy Act suit); *Marcotte v. Sec'y of Defense*, 618 F. Supp. 756, 763 (D. Kan. 1985)

(concluding that the Department of the Air Force, not the separate entities encompassed within it,

is the "agency" for purposes of the Privacy Act).  The United States Department of Justice, then,

is the remaining defendant.[3]

### 2. Plaintiff's Claims are Barred by the Statute of Limitations

---

[2]     Plaintiff does not bring any civil rights claims against the individual defendants in their individual capacities pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971)).  *See* Pl.'s Opp'n at 38, 44.

[3]     The Court will grant plaintiff's "Motion for Voluntary Dismissal" [#26] and deny plaintiff's "Motion to Re-Instate/Refile Suit" [#31] against the DEA, which is a component of the Department of Justice.

A Privacy Act cause of action arises "at the time that (1) an error was made in maintaining plaintiff's records; (2) plaintiff was harmed by the error; and (3) the plaintiff either knew or had reason to know of the error." *Szymanski v. United States Parole Comm'n*, 870 F. Supp. 377, 378 (D.D.C. 1994); *see Tijerina v. Walters*, 821 F.2d 789, 798 (D.C. Cir. 1987). A new cause of action does not arise each time an adverse determination is made based on the allegedly erroneous records. *Harrell v. Fleming*, 285 F.3d 1292, 1293 (10th Cir.), *cert. denied*, 537 U.S. 1057 (2002); *Bergman v. United States*, 751 F.2d 314, 317 (10th Cir.), *cert. denied*, 474 U.S. 945 (1985). An action to enforce a Privacy Act claim must be filed within two years from the date on which the claim arises. 5 U.S.C. § 552a(g)(5). Unless the statute of limitations is equitably tolled, a late-filed Privacy Act claim is time barred. *See Chung v. United States Dep't of Justice*, 333 F.3d 273, 278 n.1 (D.C. Cir. 2003).

Because statute of limitations issues often depend on contested questions of fact, the Court must exercise caution before dismissing a complaint on statute of limitations grounds based solely on the face of the complaint. *See Richards v. Mileski*, 662 F.2d 65, 73 (D.C. Cir. 1981) (commenting on the "inherent problem in using a motion to dismiss for purposes of raising a statute of limitations defense"). Thus, the Court may grant a motion to dismiss as untimely "only if the complaint on its face is conclusively time-barred," *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996), or "if 'no reasonable person could disagree on the date' on which the cause of action accrued." *Smith v. Brown & Williamson Tobacco Corp.*, 3 F. Supp. 2d 1473, 1475 (D.D.C. 1998) (citing *Kuwait Airways Corp. v. Am. Sec. Bank, N.A.*, 890 F.2d 456, 463 n.11 (D.C. Cir. 1989)).

6

Defendant argues that plaintiff's cause of action accrued by July 22, 2004, the date on which he objected to the PSR's contents in open court, yet he failed to file his complaint within two years of that date. *See* Defs.' Mot. at 13-15. Because plaintiff did not file his action until December 2007, defendant argues that it is barred by the two-year statute of limitations.[4] *Id.* at 14. Plaintiff counters that defendant is to blame for any delay in the filing of this action. *See* Pl.'s Opp'n at 37-38. He asserts that he "start[ed] the action within 1 year of . . . becoming aware of the inaccurate/false information," and that he "was patiently waiting for Defendants to discharge their duties" under the Privacy Act. *Id.* at 38. In the alternative, he argues that the statute of limitations should be tolled "[f]or 'Continuing Violations Doctrine.'" *Id.* According to plaintiff, defendants "are still 'disseminating' and violating the mandates of the Privacy Act." *Id.*

Plaintiff's own complaint establishes that he knew of inaccuracies in the PSR on July 22, 2004, if not earlier.[5] He alleges that he notified the prosecutors, the probation officer, and the presiding judge at sentencing of inaccuracies in the PSR and that he "submit[ted] documentation on the court record at sentencing . . . prov[ing] this information was in [f]act false and inaccurate." Compl. at 3. The filing of this civil action in 2007 occurred more than two years

---

[4]     The first pages of plaintiff's original Complaint and Application to Proceed Without Prepayment of Fees and Affidavit bear two date stamps, indicating that the Clerk of Court initially received the papers on September 4, 2007. It appears that the Clerk returned the papers and that plaintiff resubmitted them on October 4, 2007. The Court's records reflects that, after plaintiff's Application was approved, the papers officially were placed on the electronic docket as of December 11, 2007.

[5]     "It jsut [sic] so happened . . . [t]hat the same 'inaccurate/false information[']' that defendants willfully mainatined [sic] in their records against Plaintiff[] is the exact same 'inaccurate/false' information[] [t]hat defendants relied upon to arrest Plaintiff on Nov. 8, 2002 at 5:30 am, to obtain the arrest warrant and . . . to have Plaintiff indicted." Pl.'s Opp'n [#25-2] at 4.

later, after the statute of limitations had run.  Plaintiff's claims are barred as untimely.  *See Green*

*v. Westphal*, No. 03-3547, 2004 WL 817446, at *2 (3d Cir. Apr. 15, 2004) (affirming dismissal

of Privacy Act claims filed in December 2001 as time barred where plaintiff knew of alleged

error in his military record "in 1981 when he first sought to have his discharge upgraded from

undesirable to honorable" and where he "was also harmed by the alleged error in 1981 when he

was denied medical treatment from the Department of Veterans Affairs hospital because he did

not have an honorable discharge"), *cert. denied sub nom. Green v. Brownlee*, 543 U.S. 913

(2004); *Duncan v. United States Envtl. Protection Agency*, No. 03-15906, 2004 WL 385682, at

*1 (9th Cir. Mar. 2, 2004) (affirming dismissal of Privacy Act claims where plaintiffs "wrote a

letter on July 28, 1997, stating that they faced retaliation after their boss learned of their

whistleblowing [and] therefore knew, and informed others, of the EPA's alleged disclosure of

their identities in violation of the [Privacy] Act in July 1997, placing their January 2000

complaint well outside the limitations period"); *Harrell v. Fleming*, 285 F.3d at 1293-94

(affirming dismissal of Privacy Act claims "based on alleged errors in presentence investigation

reports prepared in connection with his criminal convictions in 1982 and 1983, which in turn

caused errors in the Bureau of Prison's and the Parole Commission's administration of his

sentences," because prisoner plaintiff "was clearly aware of the alleged errors on July 29, 1992,

when he challenged them during his initial parole hearing"); *Bowyer v. United States Dep't of Air*

*Force*, 875 F.2d 632, 636 (7th Cir. 1989) (affirming dismissal of Privacy Act claims where

plaintiff "knew (or had a reason to know) of the allegedly erroneous records sufficient to trigger

the statute of limitations, even if he did not actually know that the records were erroneous," yet

"filed this suit some twenty-three months later on January 18, 1985"), *cert. denied*, 493 U.S.

8

1046 (1990); *Molzen v. Federal Bureau of Prisons*, No. 05-2360, 2007 WL 779059, at *3

(D.D.C. Mar. 8, 2007) (concluding that cause of action arose when plaintiff challenged the

custody classification scoring based on his PSR with his Unit Team, by which time plaintiff

"knew of the errors in his records and BOP's reliance on them, and already had been harmed by

the error").  Neither the filing of inmate grievances nor the submission of Privacy Act requests to

the relevant agencies tolls the statute of limitations for filing a claim for damages.  *See*

*Christensen v. United States Dep't of Interior*, No. 04-4020, 2004 WL 2106560, at *2 (10th Cir.

Sept. 22, 2004) (filing of administrative claim pursuant to the Federal Tort Claims Act pertaining

to false testimony by agency employees before a federal grand jury "is irrelevant to the Privacy

Act limitations period, which applies to filing in federal court"); *Hubbard v. United States Envtl.*

*Protection Agency*, 809 F.2d 1, 4 (D.C. Cir. 1986) (exhaustion of administrative remedies is not a

prerequisite to filing a damages claim under the Privacy Act).

> 3.  BOP, EOUSA  and DEA Records Are Exempt from the Accuracy and Damages
> Provisions of the Privacy Act

Even if plaintiff had filed his complaint timely, the relief he demands is not available to

him.  The Privacy Act's accuracy and damages provisions do not apply to the systems of records

where the allegedly false and inaccurate information is maintained.

Subsection (e)(5) of the Privacy Act requires that an agency:

> maintain all records which are used by the agency in making any
> determination about any individual with such accuracy, relevance,
> timeliness, and completeness as to assure fairness to the individual in
> the determination.

5 U.S.C. § 552a(e)(5).  An individual may access an agency's records or information in a system

of records pertaining to him, and may request amendment of records pertaining to him.  *See* 5

U.S.C. § 552a(d).  In addition, he may file a civil action against an agency which refuses to amend its records upon request or fails to maintain its records with the requisite level of accuracy and completeness.  *See* 5 U.S.C. § 552a(g); *Sellers v. Bureau of Prisons*, 959 F.2d 307, 310 (D.C. Cir. 1992) (stating that subsection (g) provides civil remedies for violations of subsection (e)(5)).[6]  In a civil suit filed under subsection (g)(1)(C), if the Court determines that the agency's actions were willful or intentional, the Court may award actual damages sustained by the individual as a result of the agency's failure to maintain its records with the requisite level of accuracy, and further may award costs of the action and attorney fees.  5 U.S.C. § 552a(g)(4).

Notwithstanding the relief available under the Privacy Act, an agency's Director may promulgate regulations to exempt any system of records within the agency from any part of the Privacy Act, *except* subsections (b), (c)(1) and (2), (e)(4)(A) through (F), (e)(6), (7), (9), (10), and (11), and (i), if the system of records is:

> maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws, including . . . correctional, probation, pardon, or parole authorities, and which consists of . . . reports identifiable to an individual compiled at any stage of the process of enforcement of the

---

[6]      In relevant part, subsection (g) authorizes an individual to file a civil action whenever any agency "makes a determination . . . not to amend an individual's record in accordance with his request."  5 U.S.C. § 552a(g)(1)(A).  In addition, subsection (g) provides for the filing of a civil action whenever an agency:

> fails to maintain any record concerning any individual with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or benefits to the individual that may be made on the basis of such record, and consequently a determination is made which is adverse to the individual.

5 U.S.C. § 552a(g)(1)(C).

criminal laws from arrest or indictment through release from supervision.

5 U.S.C. § 552a(j)(2).  Pursuant to this authority, regulations exempt BOP's Inmate Central Records System (JUSTICE/BOP-005), among other systems of records, from subsections (d) and (g).  *See* 28 C.F.R. § 16.97(a)(1), (4).  Presentence investigation reports are maintained in the Inmate Central Records System.  *See* Defs.' Mot., Declaration of Jan Hanks ("Hanks Decl.") ¶ 1. Consequently, insofar as plaintiff demands the access to or amendment of his presentence investigation report, such relief is unavailable under 5 U.S.C. § 552a(g).[7]  *See White v. United States Probation Office*, 148 F.3d 1124, 1125 (D.C. Cir. 1998) (barring claim for amendment of presentence report); *Risley v. Hawk*, 108 F.3d 1396, 1397 (D.C. Cir. 1997) (per curiam) (denying injunctive relief on the ground that regulations exempt BOP records from amendment provision of Privacy Act); *Sellers v. Bureau of Prisons*, 959 F.2d at 309 (upholding district court's dismissal of claim for amendment of presentence report under section 552(d)).

In addition, under 5 U.S.C. § 552a(j)(2), BOP's Inmate Central Records System is exempt from subsection (e)(5) of the Privacy Act.[8]  *See* 28 C.F.R. § 16.97(j) (effective August 9, 2002); *see also* 28 C.F.R. § 16.97(k)(2).  Having exempted its records from the substantive provision regarding the agency's recordkeeping obligations, BOP effectively deprives litigants of a remedy for any harm caused by the agency's substandard recordkeeping.  Accordingly, insofar

---

[7]    An inmate may review his Inmate Central File upon request to a staff member and may challenge the accuracy of any information contained in his Central File.  *See* Hanks Decl. ¶ 6; Program Statement 5800.11, Inmate Central File, Privacy Folder and Parole Mini-Files (Sept. 8, 1997), at 18-21.

[8]    The variation in language between subsections (e)(5) and (g)(1)(C) of the Privacy Act is "of no substantive significance."  *Doe v. United States*, 821 F.2d 694, 698 n.10 (D.C. Cir. 1987) (en banc).

as plaintiff seeks damages for BOP's failure to maintain records in its Inmate Central Records System pertaining to him with the requisite level of accuracy and completeness, damages are not available. *See, e.g., Mitchell v. Bureau of Prisons*, No. 05-0443, 2005 WL 3275803 at *4 (D.D.C. Sept. 30, 2005) ("[I]nsofar as plaintiff demands damages for BOP's failure to maintain records in its Inmate Central Records System pertaining to him with the requisite level of accuracy and completeness, damages are not available[]" because such records are exempt from 5 U.S.C. § 552a (e)(5)).

Plaintiff's claims are no more successful as against the DEA and the EOUSA.   The DEA records about which plaintiff complains contain "criminal investigatory data compiled for law enforcement purposes . . . pursuant to DEA's . . . enforcement . . .  of the Federal drug laws including the Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 801 *et seq*, that [are] maintained in the DEA Investigative Reporting and Filing System (IRFS), JUSTICE/DEA-008." Defendant's Motion to Dismiss Or in the Alternative for Summary Judgment ("DEA Mot."), Declaration of William C. Little, Jr. ¶ 8.  Regulations exempt IFRS from subsections (d)(2), (e)(5), and (g), among others, of the Privacy Act.  28 C.F.R. § 16.98(c)(3).  Similarly, the offending records maintained by the United States Attorney's Office are in criminal case files, *see* Defs.' Mot., Declaration of Dione Jackson Stearns ¶ 10, which are exempt from the from the accuracy and damages provisions of the Privacy Act.  28 C.F.R. § 16.81(a)(4), (b).

### B.  *Defendants' Motion for Summary Judgment*

Even if plaintiff's complaint were timely filed and if regulations had not exempted the relevant systems of records from the Privacy Act's accuracy and damages provisions, plaintiff's claim for damages cannot succeed.

In order to recover damages, "a plaintiff must assert that an agency failed to maintain accurate records, that it did so intentionally or willfully, and, consequently, that an 'adverse' 'determination [was] made' respecting the plaintiff." *Toolasprashad v. Bureau of Prisons*, 286 F.3d 576, 583 (D.C. Cir. 2002) (quoting 5 U.S.C. § 552a(g)(1)(C)).  Plaintiff bears the burden of proving that the agency's actions in violating the Privacy Act were intentional or willful. *Albright v. United States*, 732 F.2d 181, 189 (D.C. Cir. 1984); 5 U.S.C. § 552a(g)(4).  To meet his burden, a plaintiff "must prove that the offending agency acted 'without grounds for believing [its actions] lawful' or prove that it 'flagrantly disregarded' the rights guaranteed under the Privacy Act." *Laningham v. United States Navy*, 813 F.2d 1236, 1242 (D.C. Cir. 1987) (quoting *Albright*, 732 F.2d at 189).  Negligence and inadvertence do not rise to the level of intentional or willful violations of the Privacy Act.  *See Albright*, 732 F.2d at 189.

Plaintiff insists that the BOP, the EOUSA, and the DEA have failed to maintain accurate records pertaining to his alleged involvement in a drug conspiracy, yet he fails to identify what information is inaccurate.  Apparently plaintiff calls into question any information identifying him as the source of the drugs for which Jose Soto was arrested on December 7, 2001.  *See, e.g.,* Pl.'s Opp'n at 8.  This information, as well as any information presented to the United States Magistrate Judge who approved the arrest and search warrants, to the grand jury which indicted him, to the jury which found him guilty, and to the sentencing judge who imposed sentence, plaintiff deems false.  *See id.* at 5-26 (recounting plaintiff's arrest, indictment, bond hearing, trial, and sentencing).  The Court has reviewed the exhibits plaintiff submitted, and can identify no particular record that clearly is false or inaccurate.  Plaintiff may disagree with the records'

contents, but he fails to demonstrate that any of these components have violated his rights under the Privacy Act.

The BOP faced a similar situation.  BOP policy provides that an "inmate[] may challenge the accuracy of information in his Central File, which would include a PS[R]," Hanks Decl. ¶ 6, and an inmate's case manager is responsible for assisting him with a "claim [that] there are inaccurate records maintained by the BOP that are relied upon by the BOP." *Id.* ¶ 5.  An inmate must provide staff with specific information supporting his challenge along with supporting documentation, if possible.  *See id.* ¶¶ 6-7.  Plaintiff's case manager at USP Beaumont explains she has assisted inmates "on numerous occasions to resolve the [alleged] inaccuracy [of a PSR] with the United States Probation Office," but only if the inmates "provide [her] with sufficiently detailed information to allow [her] to draft a specific letter to the originating agency responsible for generating the document detailing the alleged inaccuracy." *Id.* ¶ 7.  She states that plaintiff was not able to provide such detail, for example, by specifying which paragraph of his PSR was inaccurate and what sentencing guideline was applied in error. *Id.* ¶¶ 8-9.  Rather, she states that plaintiff "merely handed [her] a stack of papers that was approximately two inches thick with no specific inaccuracies tagged for [her] reference" and no supporting documentation, *Id.* ¶ 8.  She states that she explained her need for "more detail as to what, specifically, was inaccurate." *Id.* ¶ 9.  To assist plaintiff, she showed him another inmate's challenge to the accuracy of his PSR "which resulted in [her] contacting the United States Probation Office" because that inmate "pointed [her] to the alleged inaccuracy in his PS[R], stated how he thought it should be changed and provided . . . supporting documentation" *Id.*  "A general statement, such as 'my PS[R] is wrong,' is not specific enough to warrant a written letter to the United States Probation Office or

14

sentencing court." *Id.* ¶ 7.  Absent adequate information from plaintiff, BOP staff cannot be faulted for the alleged failure to take steps to ensure the accuracy of information included in his Central File, including his PSR.

The plaintiff has failed to show that the relevant records are inaccurate, and, accordingly, his Privacy Act claim for damages must fail.  *See Doyharzabal v. Gal*, No. 7:00-2995-24BG, 2001 WL 35810671, at *3 (D.S.C. Sept. 13, 2001) (plaintiff who offered "little other than bare assertions to support his claim that disputed statements regarding contraband and gang membership were inaccurate" did not establish that BOP records pertaining to him were inaccurate).  Without some indication that BOP, the EOUSA, or the DEA have failed to maintain accurate records pertaining to plaintiff, he cannot show that any of these entities violated his rights under the Privacy Act and did so willfully or intentionally.  *See Doyon v. United States Dep't of Justice*, 304 F. Supp. 2d 32, 35 (D.D.C. 2004) (plaintiff who was unable to establish that prior drug conviction and probation violation charges reflected in presentence investigation report maintained in Inmate Central Records System were clearly wrong did not demonstrate intentional or willful violation of his rights under the Privacy Act), *appeal dismissed*, 2004 WL 2185923 (D.C. Cir. Sept. 24, 2004).

III.   CONCLUSION

Plaintiff's Privacy Act claims are barred by the statute of limitations.  Even if plaintiff's complaint were filed timely, his claims under the Privacy Act's accuracy and damages provisions must fail.  Defendants' dispositive motions will be granted.  A separate Order accompanies this Memorandum Opinion.

Signed this 30th day of January, 2009.

_____/s/_____
RICHARD W. ROBERTS
United States District Judge